IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| Viehweg, William Herman ) | |
| Plaintiff ) | |
| ) | Civil Action No. 3;17-cv-3140 |
| vs. ) | |
| ) | Judge Sue E. Myerscough |
| Sirius XM Radio, Inc. ) | |
| Defendant ) | Jurty Trial Demand |

AMENDED COMPLAINT

COMES NOW plaintiff William H. Viehweg and in support of his amended complaint against defendant Sirius XM Radio, Inc. states as follows.

COUNT I

1. For the period involving the allegations below and continuing until the present day, Plaintiff William Herman Viehweg was an individual citizen of the State of Illinois and recided in Macoupin County.

2. For the period involving the allegations below and continuing until the present day, defendant Sirius XM Radio, Inc. (hereinafter Sirius Radio) was incorporated in the State of Delaware; it's primary residence is in the State of New York; and it does business in all forty-eight contingent states, including the State of Illinois.

3. This court has jurisdiction based on diversity of citizenship, 28 U.S.C. §1332, the parties being citizens of different states and the amount in controversy exceeding $75,000.

4. Defendant Sirius Radio is a large corporation with assets and revenues in the hundreds of millions of dollars. Defendant is nationally known and practically a household

1

name. Defendant is in the business of providing proprietary radio content over the internet using satellites. Defendant has arranged with the automobile manufacturers to have virually all new automoble radios to be Sirius Radio enabled. Defendant has arranged with the tens of thousands of American automobile dealers to activate a trial service at the time of the automobile's purchase. Defendant's business is primarily a sales organization, its financial life blood being individual subscriptions. Defendant places great emphasis on sales and renewals, and strongly discourages cancellations. Defendant has millions of subscriptions with the average subscription producing revenue of just over one hundred dollars per year. The primary form of subscriber payment for said subscriptions is via a credit card, with said credit cards being subject to continuous charges.

5. Defendant Sirius Radio's business model has inherent complications. First, because of the number of subscribers and the reasonably expected changes to said subscriber's personal information and status of subscription, the total volume of data, and the total volume of transactions to that data, is very large. Second, it is reasonably expected that most of said subscriber's names are not unique. Third, it is reasonably expected that land-line telephone numbers are not necessarily exclusive to said subscriber. Fourth, the tens of thousands of automobile dealership agents, with access to said subscriber data, would be reasonably difficult to train and manage. And fifth, the subscriber's trust in privacy is paramount, as the subscriber's personal information is confidential, with the subscriber's credit card number, especially one held for potential future charges, so highly confidential as to almost be considered fiduciary.

6. To lower costs, defendant Sirius Radio has inacted policies so reckless as to inherently compromise the subscriber's privacy, including the following: First, defendant's policy of identifing subscribers by name only, not by unique personal identifiers, irregardless that many names are, or appear to be, deplicates; Second, defendant's policy of identifying subscribers by land-line telephone numbers only, irregardless as to whether the subscriber is actually the caller; Third, defendant's policy of making changes to subscriptions without confirmation of said changes; Fourth, defendant's policy of providing insufficient oversite to insure that new subscriptions, or changes to established subscriptions, made by the tens of thousands of agent car dealerships, is accurate; Fifth, defendant's policy of failing to flag for immediate attention obviously repetitive or unusual account activity, such as high activity of conflicting nature or subscriber complaints of unauthorized activity; Sixth, defendant's policy of failing to adequately hold employees and agents accountable for reckless errors or intentional misconduct; and Seventh, defendant's policy of, instead of correcting mistakes or errors, imploying cover-ups, which include attacking the credibility of a subscriber, or rewarding a subscriber for silence.

7. In an attempt to protect the defendant Sirius Radio from protential subscriber complaints, especially of violation of privacy, defendant has established policies that restrict the subscriber's ability to hold defendant accountable. First, defendant claims exclusive New York jurisdiction. Second, defendant limits any civil action to small claims court or forced arbitration. Third, defendant prohibits class actions. And fourth, defendant claims immunity from tort actions. Said layoring of restrictions is designed to leave a subscriber from the State of Illinois with no economically viable redress. While said restrictions may be individually legal, the

defendant can hide behind them, in an air of almost total immunity from any misconduct.

8. Defendant Sirius Radio is understandably sensitive to subscriber complaints as the defendant has a history of being sued by several state attorneys general over subscriber issues.

9. On October 8, 2015, plaintiff purchased a new car from the Roger Jennings dealorship in Hillsboro, Illinois. The dealership activated the free ninety-day trial subscription to Sirius Radio. Plaintiff's trial subscription, account #415398040946, included the following: a) plaintiff's name (William Viehweg); b) plaintiff's address (114 2nd, Mt Olive, Il 62069); c) plaintiff's phone number (217-999-5061); d) Plaintiff's car radio ID (ESN) (5D64K301); and e) plaintiff's car make and model (2016 Chevrolet Cruze Limited). Sometime in December 2015, defendant mailed plaintiff a notice that plaintiff's trail period was ending on January 8, 2016 and suggested that plaintiff purchase additional months.

10. On January 8, 2016 plaintiff telephoned defendant and agreed to purchase five months of service at a discount. Defendant billed plaintiff's Visa credit card account (ending in 3490) for $34.16. Plaintiff had entered into a contract with the defendant with all terms set and memorialized in writting by the defendant. Plaintiff's visa card could be automatically billed if the plaintiff did not timely cancel. Plaintiff's extended service agreement ended June 8, 2016. In March of 2016 defendant mailed to the plaintiff a notice of upcoming price increases.

11. After the defendant's above notice of March 2016, and before the plaintiff's extended subscription ended on June 8, 2017, and unbeknown to the plaintiff, the following occurred: a) a person with a similar but different name, William Harry Viehweg (hereinafter Harry Viehweg), and who resided in Madison County, Illinois, purchased a Ford Edge; b) When

the dealership contacted the defendant to set up the trial subscription for Harry Viehweg's car, rather than a separate and unique account being created for Harry Viehweg, Harry Viehweg's personal data was recklessly, and inexplicably, entered into the plaintiff's established account; c) The merged account retained the plaintiff's car radio identification and the plaintiff's home landline telephone number; d) While plaintiff's visa credit card number remained in the account history, it was replaced by Harry Viehweg's American Express credit card number as the active credit card; and e) Subscription radio service continued for both vehicles.

12. The act of defendant replacing the plaintiff's credit card with Harry Viehweg's credit card began what eventually amounted to conversion with any and all contractual rights or obligations converted from the plaintiff to Harry Viehweg.

13. On June 8, 2016, plaintiff, still unaware of the above said converted account, telephoned the defendant to extend his subscription. The defendant identified the telephone number with the account, but made no effort to identify the party on the line - the plaintiff. Defendant informed the plaintiff that the subscription to the radio in the red cruze had already been extended, automatically, that morning, and that the credit card in the account had been charged for three months of service at standard price. Plaintiff negotiated with the defendant and ultimately agreed to a one year subscription. The defendant billed the account's credit card for the difference between the one year rate and what had already been automatically charged. Defendant recorded the plaintiff vocally authorizing the charge to the account's credit card. Plaintiff was under the belief that he was authorizing the defendant to charge his Visa credit card. During the telephone conversation, the defendant inquired of the plaintiff the status of

the Ford Edge. Plaintiff, surprised and concerned, replied that he had no such automobile. The defendant responded that the Ford Edge would be removed from the account.

14. On June 9, 2016, plaintiff found his car's Sirius XM radio receiver to be deactivated. The plaintiff telephoned the defendant to inquire and was informed by the defendant that the plaintiff's cruze had been removed from the account and that the Ford Edge was back on the account. The plaintiff expressed concern about unauthorized activity on his account and access to his credit card and stated he wanted to cancel. The defendant transfered the telephone call to another representative, one specializing in preventing cancellations. The new representative negotiated with the plaintiff and ultimately agreed to a) reactivate the plaintiff's car radio, b) remove the Ford Edge from the account, and c) credit the account's credit card $20.00 for any inconvenience to the plaintiff.

15. On or about June 10, 2016, Harry Viehweg's wife, Bridget Viehweg, contacted defendant about the unauthorized transactions by defendant that she discovered on his American Express credit card. Defendant stated to Bridget Viehweg that the plaintiff had commited "identity theft". Bridget Viehweg called the Illinois Madison County sheriff's office to report said "identity theft" by the plaintiff. The Madison County Sheriff's office then made contact with the Mt. Olive police department. The Mt. Olive police department then made contact with the plaintiff.

16. On June 10, 2016 plaintiff was in contact with the Madison County sheriff's office. The plaintiff explained his actions regarding the defendant and the sheriff's office immediately concluded that the problem was not identity theft, but account management by defendant. The

sheriff's office immediately informed Bridget Viehweg of its conclusion and suggested, and arranged, for her to contact the plaintiff. Bridget Viehweg did contact the plaintiff wherein the plaintiff explained that he had not committed identity theft. Bridget Viehweg responded by giving the plaintiff her telephone number and stating that she was going to demand from the defendant a life-time subscription. Bridget Viehweg then contacted the defendant. The defendant, doubling down on its position and in an effort to fraudulantly convince Bridget Viehweg that it was not the defendant's fault, again stated to the wife that the plaintiff had committed "identity theft", and rewarded her for her acceptance, or silence. When the plaintiff later tried to telephone Bridget Viehweg, she refused to accept the call. Harry Viehweg is originally from the same city the plaintiff recides in, had previously met the plaintiff at the plaintiff's house, and is a distant relative.

17. Defendant subsequestly deactivated Plaintiff's radio . When the plaintiff telephoned the defendant to complain about his radio's deactivation, the defendant refused to acknowledge the plaintiff as a subscriber, was discourteous and dismissive, refused to transfer the call to a supervisor to investigate the plaintiff's allegation of being a subscriber with an open subscription, and gave the plaintiff the brush-off.

18. Defendant's above said three unauthorized transactions on Harry Viehweg's American Express card exposed the defendant to potential civil, criminal, and governmental agency liabilities. The defendant's above said statements of "identity theft" were borne out of a motive to cover-up any such liabilities, and to wrongfully influence the witness/victims Harry and Bridget Viehweg. To effect a cover-up, and to benefit from said cover-up, defendant has

done the following: 1) erased or denied defendant's history as a subscriber; 2) effectively stolen the plaintiff's identity by deliberately and fraudulently leaving plaintiff's confidential information converted to Harry Viehweg's account; 3) deliberately compromised the plaintiff's confidential information, expecially the credit card number, by intentionally leaving said information accessible by unauthorized third parties - Harry and Bridget Viehweg; and 4) never withdrew, corrected, or apologized for, said false statements accusing the plaintiff of having committed the crime of identity theft.

19. On, or about, October 10, 2017, after becoming aware of this law suit, defendant's in-house counsel Tyler Theis telephoned the defendant and 1) stated that simple errors had been made, 2) made no offer to protect the plaintiff's compromised confidential information, 3) made no offer to correct the false statements of identity theft, and 4) proceeded to laugh at the plaintiff.

20. That defendant, as above stated on or about June 10, 2016, did publish, the first time, to Bridget Viehweg, the statement that the plaintiff had committed "identity theft".

21. That said above statement that the plaintiff had committed "identity theft" was false and as identity theft is a crime, defamatory per se.

22. As a proximate result of the foregoing defamatory statement by defendant, plaintiff suffered injuries, including embarrassment and injuries to his reputation.

23. The foregoing defamatory statement was made by Defendant with the knowledge of its falsity and with actual malice, so as to justify an award of punitive damages.

24. Plaintiff demands a jury trial.

THEREFORE, for Count I, Plaintiff William Herman Viehweg prays for compensatory damages against the defendant Siruis XM Radio, Inc. in the amount greater than $85,000.00 and for punitive damages in the amount greater than $85,000.00, and for costs, and for any other relief this Court deems proper.

## COUNT II

25. Herein plaintiff sets out as if stated in full, paragraphs 1 through 19 from count I.

26. That defendant, as above stated on or about June 10, 2016, did publish, the second time, to Bridget Viehweg the statement that the plaintiff had committed "identity theft".

27. That said above second statement that the plaintiff had committed "identity theft" was false and ad identity theft is a crime, defamatory per se.

28. As a proximate result of the foregoing second defamatory statement by defendant, plaintiff suffered injuries, including embarrassment and injuries to his reputation.

29. The foregoing second defamatory statement was made by Defendant with the knowledge of its falsity and with actual malice, so as to justify an award of punitive damages.

30. Plaintiff demands a jury trial.

THEREFORE, for Count II, Plaintiff William Herman Viehweg prays for compensatory damages against the defendant Siruis XM Radio, Inc. in the amount greater than $85,000.00 and for punitive damages in the amount greater than $85,000.00, and for costs, and for any other

relief this Court deems proper.

                    Respectfully,

                    */s/ William H. Viehweg*
                    William H. Viehweg, Plaintiff
                    114 W. 2nd South Street
                    Mt. Olive, Illinois  62069
                    217-999-5061

## CERTIFICATE OF SERVICE

Plaintiff William H. Viehweg hereby certifies that the foregoing was served upon the Defendant, on November 16 2017, via ordinary U.S. Mail, first class, to the following:

Mac Murray & Shuster, LLP
c/o Helen Mac Murray
6530 W. Campus Oval, Suite 210
New Albany, OH  43054

Respectfully,

*William H. Viehweg*, plaintiff
114 W. 2nd South Street
Mt. Olive, Illinois  62069
217-999-5061