IN THE UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | |
|---|---|
| WILLIAM HERMAN VIEHWEG, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 17-3140 |
| ) | |
| SIRIUS XM RADIO, INC., ) | |
| ) | |
| Defendant. ) | |

OPINION

SUE E. MYERSCOUGH, U.S. District Judge.

Defendant Sirius XM Radio, Inc. has filed a Motion to Stay Proceedings and Compel Arbitration (d/e 25). Defendant contends that pro se Plaintiff William Herman Viehweg's defamation claims are subject to arbitration pursuant to the Customer Agreement that it entered into with Plaintiff. Because Plaintiff's defamation claims are not subject to arbitration, Defendant's Motion is DENIED.

I. BACKGROUND

In June 2017, Plaintiff, a resident of Macoupin County, Illinois, filed a Complaint against Defendant Sirius XM Radio, Inc.,

Page **1** of **11**

a company that provides proprietary radio content over the internet using satellites.  In November 2017, Plaintiff filed an Amended Complaint pleading two counts of defamation against Defendant.  See Pl.'s Stipulation (d/e 21) (stating that Plaintiff's Amended Complaint only pleads two counts of defamation).

The Amended Complaint and documents submitted by the parties in response to Defendant's motion provide the following information.

On October 8, 2015, Plaintiff purchased a new car and received a free 90-day trial subscription to Sirius XM Radio.  On December 28, 2015, before his trial subscription ended on January 8, 2016, Plaintiff telephoned Defendant and agreed to purchase five months of service.  During that telephone call, the Sirius XM customer care agent asked Plaintiff the following:

> Your customer agreement can be found on our website at siriusxm.com or you can request that at any time by phone.  If there is an email address on your account, a confirmation of this transaction will be sent to that email address within five days.  Do you accept these terms?

Plaintiff responded, "Yes."  Declaration of Jeanne Hutchins, Exhibit A (d/e 25-2); see also Customer Agreement  (d/e 25-1, p. 3 of 19)

(advising the customer that, by using the site or the service, he agrees to be legally bound by the Agreement; if he does not accept the terms, he should notify the company immediately and the subscription will be cancelled; and if the subscription is not cancelled within three business days of the start of the plan, the customer agrees to the Agreement).

Sometime between March 2016 and June 2016, and unbeknownst to Plaintiff, Defendant improperly merged Plaintiff's account with the account of another individual with a similar name, William Harry Viehweg ("Harry"), a distant relative of Plaintiff's who resides in Madison County, Illinois. Defendant purportedly left some of Plaintiff's information on the account but designated Harry's credit card as the active card.

Plaintiff alleges that, on June 8, 2016, he telephoned Defendant to extend his subscription for one year. Harry's credit card was charged.

The next day, Plaintiff discovered his Sirius XM radio receiver was deactivated. Plaintiff called Defendant and learned that his vehicle had been removed from the account and replaced with another vehicle. Defendant ultimately agreed to reactivate

Plaintiff's Sirius XM radio, remove the other vehicle from the account, and credit the account's credit card in the amount of $20.

On or about June 10, 2016, Harry's wife, Bridget Viehweg ("Bridget"), contacted Defendant about unauthorized transactions on Harry's credit card. Defendant allegedly told Bridget that Plaintiff committed identity theft. Bridget called the Madison County sheriff's office to report that Plaintiff committed identity theft. The Madison County sheriff's office contacted the Mt. Olive police department, who then made contact with Plaintiff. The Mt. Olive police officer immediately concluded that the problem was not identity theft but account management by Defendant and arranged for Bridget to contact Plaintiff. Bridget spoke to Plaintiff and then contacted Defendant. Defendant again allegedly told Bridget that Plaintiff committed identity theft and purportedly "rewarded her for her acceptance, or silence." Am. Compl. ¶ 16. Bridget refuses to accept Plaintiff's calls, and Defendant subsequently deactivated Plaintiff's Sirius XM radio service. Defendant refuses to acknowledge Plaintiff as a subscriber.

Plaintiff alleges that he has suffered injuries, including embarrassment and injuries to his reputation. He seeks

Page **4** of **11**

compensatory damages in excess of $85,000 and punitive damages in excess of $85,000.

The Customer Agreement contains a provision entitled "RESOLVING DISPUTES." See Declaration of Julie Manning, Exhibit A, Customer Agreement ¶ I (d/e 25-1). The Agreement provides:

> THE PARTIES UNDERSTAND THAT THEY WOULD HAVE HAD A RIGHT OR OPPORTUNITY TO LITIGATE DISPUTES THROUGH A COURT AND TO HAVE A JUDGE OR JURY DECIDE THEIR CASE, BUT THEY CHOOSE (BY THEIR ACCEPTANCE OF THIS AGREEMENT, IN ACCESSSING OR USING THE SERVICE OR THE SITE) TO HAVE ANY DISPUTES RESOLVED THROUGH ARBITRATION.

Id. ¶ I. Specifically, the Agreement provides that the parties "agree that any legal or equitable claim relating to the Service, the Site, or your Subscription or this Agreement (a "Claim"), will be resolved" by the process described in the Agreement. The Agreement defines "the Service" as:

> the Satellite Radio Service, Internet Radio Service, the traffic and weather services, including maritime weather, aviation weather, the infotainment service and any other programming or data for Equipment Technology for radio, television, online, portable, wireless, mobile, and other receivers now known or later developed[.]

Agreement (d/e 25-1, p. 3 of 19). "The Site" is defined as the website available to subscribers at www.siriusxm.com. The "Subscription" includes the subscriber's paid, trial, or other subscription in the service area to the satellite radio service. Id. Finally, "the Agreement" is defined as the customer service agreement between the customer and Sirius XM Radio, Inc. Id.

The Agreement provides for informal claim resolution. Agreement ¶ I(1). The Agreement further provides:

> If we cannot resolve a Claim informally, including any Claim between us, and any Claim by either of us against any agent, employee, successor, or assign of the other, including, to the full extent permitted by applicable law, third parties who are not party to this Agreement, whether related to this Agreement or otherwise, including past, present, and future Claims and disputes, and including any dispute as to the validity or applicability of this arbitration clause, then these Claims shall be resolved upon election by either party, exclusively and finally by binding arbitration.

Id. ¶ I(2).

The Agreement indicates that the arbitration would be administered by the rules and procedures of the American Arbitration Association. The Agreement further provides that the arbitration agreement is made pursuant to a transaction involving interstate commerce and is governed by the Federal Arbitration

Act. Finally, the Agreement provides that Section I—the dispute resolution section—"shall be governed by the FAA without reference to state law." Agreement ¶ J(5) (applicable law).

## II. JURISDICTION

This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(a). Complete diversity exists between the parties. Plaintiff is a citizen of Illinois. Defendant is incorporated under the laws of the State of Delaware and has its principal place of business in New York. In addition, the amount in controversy exceeds $75,000 exclusive of interest and costs. In the Complaint, Plaintiff seeks compensatory damages in an amount greater than $85,000 and punitive damages in an amount greater than $85,000. See McMillian v. Sheraton Chi. Hotel & Towers, 567 F.3d 839, 844 (7th Cir. 2009) (noting that, where the defendant does not contest the jurisdictional threshold, the court accepts a plaintiff's good faith allegation regarding the amount in controversy unless it appears to a legal certainty that the amount is less than the jurisdictional amount).[1]

---

[1] Defendant filed a Motion to Dismiss the original complaint asserting that Plaintiff had no basis for the speculative and uncertain amount of damages

### III. ANALYSIS

The Federal Arbitration Act provides that binding arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. This provision was intended to put "arbitration agreements on equal footing with other contracts." AT&T Mobility LLC v. Concepcion, 563 U.S. 333, 339 (2011).

When a party attempts to avoid arbitration and files suit in the district court, the other party can move to stay or dismiss the action under the Act. 9 U.S.C. § 3 (providing for a stay until the arbitration has been held in accordance with the agreement); 9 U.S.C. § 4 (providing that an aggrieved party can petition the district court for arbitration); see also Volkswagen of Am., Inc. v. Sud's of Peoria, Inc., 474 F.3d 966, 970 (7th Cir. 2007). To compel arbitration, the party seeking arbitration must show (1) an agreement to arbitrate; (2) a dispute within the scope of the arbitration agreement; and (3) a refusal by the opposing party to

---

alleged. See Mot. at 2 (d/e 6). When Plaintiff filed an amended complaint, Defendant did not file a motion to dismiss but filed an answer and denied the paragraph asserting that the Court has jurisdiction based on diversity of citizenship. See Am. Answer ¶ 3 (d/e 26). At this stage, the Court accepts Plaintiff's good faith allegations regarding the amount in controversy.

arbitrate. Zurich Am. Ins. Co. v. Watts Indus., Inc., 466 F.3d 577, 580 (7th Cir. 2006). The Court may consider matters outside the pleadings when ruling on a motion to stay the litigation and compel arbitration. Armbrister v. Pushpin Holdings, LLC, 896 F.Supp.2d 746, 753 n. 3 (N.D. Ill. 2012).

In this case, even assuming the parties have an agreement to arbitrate, the Court finds that the dispute does not fall within the scope of the arbitration clause.

Arbitration is a matter of contract, and a party cannot be required to arbitrate a dispute that he has not agreed to arbitrate. Gore v. Alltel Commc'ns, LLC, 666 F.3d 1027, 1032 (7th Cir. 2012). The Court applies state-law contract formation principles to determine whether a contract's arbitration clause applies to the dispute. Id. "Once it is clear, however, that the parties have a contract that provides for arbitration of some issue between them, any doubt concerning the scope of the arbitration clause is resolved in favor of arbitration as a matter of federal law." Id. A court should not deny a request for arbitration unless "it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute."

United Steelworkers of Am. v. Warrior & Gulf Nav. Co., 363 U.S. 574, 582-83 (1960).

Under Illinois law,[2] the court's primary objective when construing a contract is to give effect to the parties' intent. Gallagher v. Lenart, 226 Ill. 2d 208, 232 (2007). The court gives the language in the contract its plain and ordinary meaning. Id. at 233.

In the Agreement, the parties agreed to arbitrate "any legal or equitable claim relating to the Service, the Site, or your Subscription or this Agreement" if the claim is not resolved through the informal claim resolution process. The phrase "relating to" is read broadly. Gore, 666 F.3d at 1033. However, even reading that phrase broadly, Plaintiff's defamation claims are not related to the Agreement and do not fall within the scope of the arbitration clause.

Plaintiff brings two counts of defamation against Defendant. Defendant allegedly defamed Plaintiff to another customer during a

---

[2] The Court requested supplemental briefing from the parties regarding whether New York or Illinois law applies. Defendant cited to Illinois law in its supplemental brief. See Supp. Brief at 5 (d/e 35).

discussion regarding that other customer's account. Plaintiff's claims are not related to the services or programming provided to Plaintiff ("the Service"), the website available to subscribers ("the Site"), Plaintiff's subscription ("Subscription"), or the customer service agreement between Plaintiff and Defendant ("the Agreement'). Because the arbitration clause is not susceptible to an interpretation that covers the dispute, Defendant's motion to compel arbitration is denied.

### IV. CONCLUSION

For the reasons stated, Defendant's Motion to Stay Proceedings and Compel Arbitration (d/e 25) is DENIED.

**ENTERED: May 7, 2018**

**FOR THE COURT:**
                          <u>s/Sue E. Myerscough</u>
                          **SUE E. MYERSCOUGH**
                          **UNITED STATES DISTRICT JUDGE**