IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

WILLIAM HERMAN VIEHWEG, )
)
    Plaintiff, )
)
 v. )       Case No. 17-3140
)
SIRIUS XM RADIO, INC., )
)
    Defendant. )

## OPINION

RICHARD MILLS, United States District Judge:

Pending is the Defendant's motion for summary judgment.

## I.    INTRODUCTION

William Herman Viehweg ("the Plaintiff" or "Viehweg") filed this lawsuit on June 12, 2017.  In his second amended complaint, the Plaintiff claims that Defendant Sirius XM Radio ("the Defendant" or "Sirius") accused him of having committed identity theft, thereby defaming him.

The Defendant denies doing so and claims this lawsuit is the product of a simple mix-up because the Plaintiff has the same first name, last name and middle initial with another man who lives in a neighboring community and who also subscribes to Sirius XM.

The Plaintiff disputes the Defendant's assertion, claiming that this lawsuit has resulted from the Defendant's fraudulent business practices which led to the Defendant maliciously defaming the Plaintiff twice.

## II.     FACTS

<u>Background</u>

The Plaintiff, who was 69-years old at the time the motion was filed, has never been married and has no children.  He has never had an internet account in his life, nor an email address.  He has not had an American Express credit card in the last 10 years.  He never had Sirius XM service until he bought a 2016 Chevy Cruze from the Roger Jennings Dealership in Hillsboro, Illinois, in October of 2015.

The sole issue in this case is whether Defendant Sirius XM accused Plaintiff William Herman Viehweg of "identity theft" in a telephone call or calls on June 10, 2016.  The Defendant claims that Plaintiff admitted at no point did a Sirius XM representative accuse Plaintiff of "identity theft."  Viehweg claims he merely stated that the recording and the transcript, as produced by the Defendant, did not contain the words "identity theft."

Sirius XM provides a satellite radio service in the United States that currently broadcasts more than 150 channels of music, premier sports, news, talk, entertainment, traffic and weather to more than 33 million subscribers.  Radios capable of receiving XM's  radio service are installed in a majority of new vehicles

sold or leased in the United States. Pursuant to agreements between Sirius XM and automotive manufacturers, most new vehicles include a trial subscription to the Sirius SM satellite radio service. The length of trial subscriptions vary but typically last at least 90 days.

The Plaintiff lives in Mount Olive, Illinois. In October 2015, the Plaintiff purchased a 2016 Chevrolet Cruze. The Plaintiff received a 90-day trial period of Sirius XM radio. The Plaintiff did not sign any documents at the time relating to Sirius's service, but was assigned an account number for his 90-day trial subscription. Sirius established the account holder's name as William Viehweg. Viehweg was happy with Sirius XM's services and on December 28, 2015, decided to renew and pay for a Sirius XM subscription after his trial period ended. The Plaintiff claims Sirius's agent verified seven identifiers by: asking the Plaintiff to verify the radio ID, name, address, telephone number, noticing and confirming no email address, and verifying the car type and service package. The Plaintiff used a Visa credit card and paid for a five-month plan that would expire on June 8, 2016.

The Plaintiff has a distant relative named William Harry Viehweg ("Harry"), who since at least August 2015 has lived with his wife Bridget and their child in nearby East Alton, Illinois. The Plaintiff and the other Viehwegs live approximately 30 to 40 minutes away from each other. Harry lived in Mount Olive, where he graduated from high school, approximately 15 years ago.

## Account mix-up

The other Viehwegs had been Sirius XM customers since December of 2012. The account holder was William Viehweg. The Defendant claims that, on May 4, 2016, a call center representative from Sirius XM's vendor, JNet Communications LLC (d/b/a Servicom), called Bridget Viehweg to renew the other Viehwegs' Sirius XM subscription on a 2015 Ford Edge vehicle after the free trial ended. The other Viehwegs had leased the vehicle in April 2016, upon trading in their Ford Fusion.[1] The Plaintiff alleges there is no evidence to support the allegation that the May 4th telephone call was from Servicom. The Defendant asserts that, during the phone call, the agent incorrectly consolidated Bridget and Harry Viehweg's Sirius XM account with the Plaintiff's Sirius XM account. The Plaintiff claims that his account, ending in 0948, was consolidated with not one, but two other accounts, ending in 4478 and 0306. The Plaintiff alleges Sirius XM's attempt to verify the address established two addresses: Mallard Drive on the Ford Edge account and Airwood Drive on the Ford Fusion "existing account." When Sirius attempted to verify the Cruze Limited (Plaintiff's account), Bridget responded negatively with "Nope, I've never had a Cruze." The other Viehwegs' six-month plan would begin when their trial period ended. Neither party mentioned nor requested consolidating accounts.

---

[1] On April 22, 2016, Bridget telephoned Sirius XM and canceled the subscription on their Ford Fusion.

The Plaintiff also alleges that, at the time of the phone call, Bridget was not a customer of Sirius after having sold her Ford Fusion a few weeks earlier. The account was under Harry's name.

The Defendant's vendor's representative mistakenly consolidated the Plaintiff's account with the other Viehwegs' accounts and Sirius XM emailed a confirmation of that consolidation to Bridget Viehweg. Beginning on May 4, 2016 and continuing into June 2016, the account mix-up caused inadvertent service interruptions and account information errors for both the Plaintiff and the other Viehwegs. The Plaintiff disputes the terms "mix-up," "inadvertent" and "errors."

On June 8, 2016, at 12:44 a.m., Sirius XM automatically renewed the Plaintiff's subscription on his Cruze and billed the other Viehwegs' credit card $54.64, without their authorization. Sirius subsequently charged another credit card of the other Viehwegs $58.12, without their permission. Apparently, this charge was from a Ford Edge that Plaintiff had rented some time ago. The other Viehwegs were understandably frustrated. In a June 9, 2016 phone call, Bridget Viehweg expressed concern that someone had access to her Sirius XM username, password, credit card and other information and she wanted the problem straightened out.

June 10, 2016 phone call

The Defendant claims its business records show that there was only one phone call between Sirius XM's vendors and Bridget on the day of the alleged defamation,

June 10, 2016. Bridget confirmed this at her deposition. The Plaintiff disputes these assertions and alleges there was a second telephone call between the Defendant and the Viehwegs on June 10, 2016. The Defendant alleges Bridget called Sirius XM because services in her Ford Edge were shut off again. The Plaintiff alleges Bridget called Sirius XM because, after thinking matters had been resolved while at lunch with her family, she reached the conclusion that Plaintiff had gotten into their account and changed everything again. At the outset of the phone call, Bridget advised, "I have someone who keeps connecting their vehicle to our account. . . . And I need to talk to somebody in upper management because this is going to get elevated because I am ready to call the police station." She claimed that Sirius XM was "letting people fraudulently register their vehicles on [her] account." Bridget threatened to "cancel all services," stating "this is beyond ridiculous." She mentioned her plan to file a police report at several points in that call.

The Defendant alleges that in response to Bridget's questions about whether another user accessed her account, the representative kept trying to identify and address the problem throughout the call. The Plaintiff disputes that the representative was trying to identify and address the problem. Bridget assumed that the third party accessing her account had her email and telephone number (if not other information). The Plaintiff disputes the assertion, claiming Bridget did not "assume" but had contacted Sirius to investigate the matter. He alleges she phoned

Sirius to confirm her hypothesis that Plaintiff had to have her email address and telephone number to access the account and the Sirius representative confirmed it, saying "Correct." The representative explained that the only way someone could make changes is after verifying the name, address and radio ID. When Bridget pressed the representative to say how someone may have changed the account information, the representative said, "I can go ahead and have that escalated but I don't have any records of the call ma'am so as much as I would like to rely on your conversation that was made earlier I don't have any records as of today. Alright, usually the process it's going to take 7-10 business days to be resolved." Sirius XM's fraud policy instructs representatives to "ask specific questions to determine if this is truly fraud or a billing issue."

Bridget believed Sirius XM had a Privacy Act issue and decided to make a police report. Sirius XM advised that all calls are recorded and Bridget could call back for further assistance.

The Plaintiff claims that Sirius twice falsely states that he had to have the radio ID on the other Viehwegs' Ford Edge in order to cancel it. Moreover, he alleges Sirius falsely states that Plaintiff had to have the other Viehwegs' email address. Additionally, Sirius falsely states it did not provide the Plaintiff with access to the other Viehwegs' account. The Plaintiff further asserts that Sirius XM, knowing that Plaintiff did not commit fraud or identity theft, convinces Bridget that he did and

that she should file a police report and that, consistent with its policy on fraud, Sirius offers its assistance.

The Defendant notes that the transcript of the call and call recording have been submitted in conjunction with its motion and, further, those documents speak for themselves and the Plaintiff misrepresents those communications. The Defendant also states it did not know the exact nature of the problem, the source of the problem or other necessary information at the time of the call. Moreover, the allegations are not material to the only legal issue before the Court: whether Sirius XM accused Plaintiff of "identity theft."

The Defendant claims the Plaintiff listened to the call recording and reviewed a transcript and acknowledged that the Sirius XM representative did not accuse him of "identity theft." The Plaintiff disputes the allegation, claiming that the recording and the transcript as produced by Sirius did not contain the words "identity theft."

Bridget testified at her deposition that she believed Sirius XM did not know what happened. Both Bridget and Sirius XM were trying to determine the root of the problem. Bridget took Sirius XM's statements in that call as guesses or opinions, not statements of fact, because "nobody really knew what was happening." The Plaintiff disputes that Bridget believed these statements at the time of the telephone conversation on June 10, 2016.

The Defendant alleges that, at the end of her call with Sirius XM on June 10, 2016, Bridget was not sure "how the confusion was taking place" and she wanted law enforcement to intervene and "get some resolution." The Plaintiff disputes the assertion, claiming that at the end of the phone call, Bridget was convinced that Plaintiff had committed identity theft and was determined to have him arrested. The other Viehwegs contacted the Mount Olive Police Department. The Mount Olive Police Department referred them to the East Alton Police Department.

Later in the afternoon, the other Viehwegs called the Madison County Sheriff's Office. The Plaintiff claims the other Viehwegs reported him for identity theft. The Defendant was not a party to that call.

A sheriff's deputy met with the other Viehwegs. The deputy determined an account mix-up occurred with someone with the same name as her husband and the Plaintiff was not at fault. The Plaintiff alleges he contacted the Madison County Sheriff's Department and spoke with Deputy Cole who informed him that a complaint of identity theft had been made against the Plaintiff. After questioning the Plaintiff, Deputy Cole stated that it was probably an administrative problem at Sirius Radio. The Plaintiff was not arrested, charged, indicted or convicted of any criminal offense. Sirius XM was not a party to these communications.

Later that afternoon, Deputies Cole and Schellhardt arrived at the other Viehwegs' home in East Alton and advised Bridget this was probably an

administrative problem with Sirius XM.  The Madison County Sheriff's Department creates an Incident Report.

The Plaintiff alleges that, upon obtaining his permission, the Madison County Sheriff's Department gave his phone number to Bridget.  The Plaintiff informed her that he has a Sirius account and has been having similar problems.  Bridget states that she is going to demand lifetime service from Sirius.  Bridget gave the Plaintiff her telephone number.  The conversation was short and businesslike.  The Defendant was not a party to the communications.

The Plaintiff alleges Bridget made a second phone call to Sirius XM.  Bridget had made no changes to the account in her previous telephone call with Sirius's supervisor.  The Plaintiff asserts that, at some point after Bridget spoke with the Madison County Deputies, substantial changes were made to the account.  The Defendant claims that the subsequent transactions shown in the account notes for June 10, 2016 were made online by Bridget Viehweg.

On June 11, 2016, the Plaintiff telephoned Sirius XM because his radio has no service.  The Plaintiff stated, "Listen, this other customer with my name, you're getting the two accounts mixed up.  The other customer assumed somebody was trying to steal their identity, so made a phone call to the police, which ended up contacting me saying I was stealing their identity."  The Plaintiff claims Sirius denied him access to the account because the account holder's name has been

changed.  The Plaintiff has not had Sirius XM service since.  The Defendant states these facts are irrelevant to the sole allegation in this case, whether Sirius XM accused Plaintiff of "identity theft" on June 10, 2016.  Moreover, the transcript speaks for itself.

Damages

The Plaintiff's alleged damages include reputational harm, emotional distress and embarrassment.  The Plaintiff seeks an amount greater than $85,000.  The Plaintiff explained that his damages included Sirius XM's alleged "refusal to correct the matter and unconsolidated the accounts, unconsolidated the mixture of private data, and to admit that they consolidated, and basically let Bridget Viehweg know that, and me."

Except for the Plaintiff's discussions with a friend, no one in his community discussed the alleged defamation with him.   The Defendant alleges that Plaintiff admits he will not have members of his community testify regarding his reputation in the community and any alleged injury thereto.   The Plaintiff disputes the allegation, claiming he will have Bridget and her husband testify regarding damages to the Plaintiff's reputation.  Moreover, the Plaintiff states he will also have Sirius agents testify regarding damages to his reputation.  Regarding his reputation in the community, the Plaintiff said "there is not much of one."  The Plaintiff further explained that, prior to this litigation, he had several disputes with the City of Mount

Olive and "there is no goodwill" and the Mayor and the Police Department were not friendly towards him.

The Plaintiff is retired, he is not seeking employment and he has not sought employment since the above incident. Regarding emotional distress, the Plaintiff says that hearing Deputy Schellhardt say "identity theft" caused him emotional distress. However, that statement was from a deputy sheriff, not Sirius XM. Additionally, Deputy Schellhardt testified that he advised the Plaintiff and the other Viehwegs that no crime occurred, that there was an account mix-up and that it was a civil matter. The Plaintiff has not sought any medical or psychiatric treatment or counseling in connection with any of the alleged conduct in this case.

<u>Post-filing of lawsuit</u>

Soon after this lawsuit, the Plaintiff received in the mail a notice congratulating him on his purchase of a new 2017 Ford F-150 with a Sirius trial subscription. The notice had the Plaintiff's name and address and included the account number and the radio id. The Plaintiff has never owned a pick-up truck. Bridget's husband, William Viehweg, had purchased a Ford F-150 on June 30, 2017.

The Plaintiff states that Sirius XM officials had communications with him and the other Viehwegs after this lawsuit was filed. He contends that when a Sirius XM representative spoke to Bridget Viehweg, Sirius did not inform Bridget Viehweg that Plaintiff's address, which was still linked to her husband's new Ford F-150, will now

be linked to their brand new consolidated account. Lastly, the Sirius representative provided Bridget with a personal email, $364.49 in refunds, and one year's free service on their Ford Edge ($226.81 value) and Ford F-150 ($226.81 value). The Defendant notes these allegations regarding events that occurred after the lawsuit was filed are irrelevant to whether it accused the Plaintiff of identity theft on June 10, 2016.

## III.   DISCUSSION

Standard of review

Summary judgment is appropriate if the motion is properly supported and "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See* Fed. R. Civ. P. 56(a). The Court construes all reasonable inferences in favor of the non-movant. *See Siliven v. Indiana Dept. of Child Services*, 635 F.3d 921, 925 (7th Cir. 2011). To create a genuine factual dispute, however, any such inference must be based on something more than "speculation or conjecture." *See Harper v. C.R. England, Inc.*, 687 F.3d 297, 306 (7th Cir. 2012) (citation omitted). Because summary judgment "is the put up or shut up moment in a lawsuit," a "hunch" about the opposing party's motives is not enough to withstand a properly supported motion. *See Springer v. Durflinger*, 518 F.3d 479, 484 (7th Cir. 2008). Ultimately, there must be enough evidence in favor of the non-movant to permit a jury to return a verdict in its favor. *See id*.

<u>B. Defamation</u>

(1)

The Plaintiff contends the Defendant accused him of a crime in a telephone call on June 10, 2016, by convincing Bridget Viehweg "to report the Plaintiff to the police for identity theft," thereby defaming him. "To state a defamation claim, a plaintiff must present facts showing that the defendant made a false statement about the plaintiff, the defendant made an unprivileged publication of that statement to a third party, and that this publication caused damages." *Solaia Tech., LLC v. Specialty Pub. Co.*, 221 Ill.2d 558, 579 (2006). "A statement is defamatory *per se* if its harm is obvious and apparent on its face." *Id*. A statement is considered defamatory *per se* if it consists of "words that impute a person has committed a crime." *Id*. at 580.

The Defendant claims the Parties agree that Sirius XM did not accuse the Plaintiff of a crime. There was only one call on June 10, 2016 so Plaintiff's second count of defamation fails. Moreover, the Defendant asserts it did not make a false statement about the Plaintiff in the June 10 phone call with Bridget Viehweg so the Plaintiff's first defamation count fails. Additionally, Sirius XM's communications with customers are privileged.

The Defendant also claims its statements were not defamatory *per se* and that Plaintiff lacks damages.

(2)

The Court has carefully reviewed the transcript of the June 10, 2016 phone call between Bridget Viehweg and Tracy, one of the Sirius XM supervisors.[2] There are several instances in which Bridget says she's going to file a police report. At one point, she asks Tracy whether she should call and file a police report and Tracy responded, "Well, it's your option ma'am but again I can go ahead and have this on resolved or if you can provide me the radio ID number so I can. . ." After stating she had done that before, Bridget said "we're not going to update the address on there until I get a police report because it doesn't sound like you guys are going to do anything for me." When Tracy noted that Sirius XM does not make changes to an account without receiving certain information, Bridget said "He is, he's making changes with my personal information and I don't even know the man. I don't think you understand it. It's not . . . he does, he does not have my permission and he's using. . ." When Tracy asked for the username in order to log in to see the account, Bridget refused to give that information because of what she believed had already happened and she was afraid Sirius XM would give that information out to someone else.

Bridget eventually provided Tracy with her email address which she uses to log in to her account. Bridget inquired as to whether the person logging in to the

[2] The transcript is attached as Exhibit 6 to the Defendant's motion for summary judgment [d/e 116].

account has to have her email address and telephone number and Tracy responded, "Correct." Tracy later says that Sirius verifies the account with three pieces of information, such as the name, address and radio ID number. Bridget continues to express her frustration, stating "I don't know what the solution is but I, this guy has got my information he's got my charge card number, my email address, everything out there." When Tracey informed Bridget that the only information the Defendant had was the information on the account, Bridget said "Then he has to have our information. I get what you are saying about changing our information, but I don't know if that is going to solve my problem or not. If he has he's got access to the account, then it does not solve my problem. I don't think you understand." After Tracy offered a month's free service of Sirius XM Bridget stated, "Do you understand that this guy has gotten into our information because you guys have allowed him to?"

Bridget then asked, "In order for him to cancel the service on the Ford Edge he had to have had that number, correct?" Bridget responded, "Exactly, yes ma'am. We are getting that information also. . ." Bridget then inquired, "Okay, he was . . . gave you that information to cancel that account in order to put the new car on it? Right?" Tracy responded, "Correct." Bridget then said: "Okay, sorry my next step is going to the police department then because obviously he has got our information. Because there is no reason he should have our radio ID on our car. Is that what you

are exactly what you are telling me he cannot switch one vehicle to another without knowing the ID of the one he had to cancel.  Correct?"  Tracy responded, "Alright, I am just checking on the history so bear with me.  Okay?"  Bridget stated, "I mean you guys have to have notes on what he did."  Tracy replied, "Okay, again ma'am we don't have any ways of figuring out if that was William that called but that's the information he gave us."  After more discussion Bridget said, "Okay, I'm going to go ahead and make a police report and if they need to get ahold of you they will be calling you guys cuz I'm not getting. . . it's not you  . . . but I am not getting a good feeling about this and I take this guy having my information very seriously, that's why I'm very aggravated."

Tracy responded, "Alright I completely understand.  So in addition, before I go ahead and for that notation that we discussed on the account, what do you want me to do with the service because as of right now there is an active account."  Bridget told her to "[l]eave it open for right now and I'll be calling to shut it down in jut a little while but I need it active so the police report can be made so please do not shut it off."  Tracy then advises that Bridget will be receiving an email confirmation. There is more discussion regarding whether her email address was provided by the other individual when changes were made.  Bridget said, "Well he made changes this morning he verified my email address."  Tracy responded, "We are the ones that's reading the emails.  If he confirmed that it's the email address, that's the one

that will be sent the confirmation." Bridget replied, "Okay that's what I needed to know. I am going to make a phone call and then you guys will hear back from us in a little while." Subsequently, Bridget directed no changes on the account and said "[t]here's going to be a police report. Because if you guys had him confirm the email address he fraudulently knew that wasn't his. So that, that's what I'm trying to get to the bottom of."

The transcript shows that Sirius XM did not accuse Plaintiff William H. Viehweg of identity theft. Bridget believed that Plaintiff had accessed she and her husband's account and made changes because Sirius XM could not identify the problem. There are two individuals named William H. Viehweg, who live in neighboring communities in southern Illinois.[3] At some point, a Sirius XM representative consolidated the accounts of the two men. As a result, the Plaintiff's account number was associated with Bridget's email address.

On a number of occasions during the phone call, Bridget said that she was going to the police because she believed that the William H. Viehweg who is not her husband had access to their account. During the phone call, the Sirius XM representative never advises her to contact the police. At all times, Tracy appears to

_____

[3] The Plaintiff states that the two Viehwegs had nothing in common except their first and last name. They also have the same middle initial and also live in nearby Illinois communities. Presumably, the Plaintiff is attempting to suggest that they could not possibly be confused with one another because of their differences. Of course, the Sirius XM representative who consolidated the accounts was not examining their backgrounds or personal histories when he or she made the error.

be trying to solve the problem. Bridget Viehweg and Tracy from Sirius XM essentially are talking in circles because neither party realizes that the accounts were consolidated.

To the extent that Plaintiff contends that by stating or suggesting that he had access to the other Viehwegs' email address, phone number and radio ID the Sirius XM representative had accused him of a crime, the Plaintiff is incorrect. That is not an accusation of a crime and not defamatory *per se*. Additionally, when the transcript is read in context, it is apparent that the Sirius XM representative is making general statements about how changes are made to one's account while at the time neither party realizes the accounts were mistakenly consolidated. She is not accusing the Plaintiff of stealing this information or committing any criminal act.

The only information in the record shows that there was one phone call on June 10, 2016. Bridget testified that she made only the one phone call to Sirius XM on that date. The Declaration of Tiffany Haggerty, the Manager, Customer Service Management, at Sirius XM Radio, "Sirius XM and its telemarketing vendors have identified all relevant call recordings associated with the accounts of Plaintiff and William Harry Viehweg and his wife, Bridget Viehweg. These business records show that there was only one phone call between a Sirius XM representative and William Harry Viehweg and/or Bridget Viehweg." Although the business records

are somewhat difficult to interpret, there is no indication that a second phone call was made and, certainly, no basis to believe that Plaintiff was accused of a crime.

Bridget Viehweg perhaps implied that she or her husband would call Sirius XM again after she contacted the police.[4] She stated, "I am going to make a phone call and then you guys will hear back from us in a little while." It appears she may instead have decided to make the changes online. The Plaintiff's speculation there was another phone call is not enough to create a genuine issue of material fact.

The Plaintiff offers nothing but speculation and conspiracy theories in support of his claim that Sirius XM accused him of identity theft. It is obvious that this was an innocent mistake that was frustrating both to the Plaintiff and the other Viehwegs. There simply is no evidence that Plaintiff was accused of identity theft or any other crime. There is no indication that Sirius XM had any sort of vendetta against him. The police almost immediately determined that the mix-up was due to an administrative error.

Even upon construing all reasonable inferences in the Plaintiff's favor, therefore, the Court concludes he is unable to meet any of the elements in support of a defamation claim. Clearly, there is no evidence the Defendant made a false statement about him. Accordingly, there was no publication of a false statement to a third party which resulted in damages.

---

[4] Significantly, Sirius XM did not advise or instruct her to contact the police.

The Defendant is entitled to summary judgment.

The remaining motions will be denied.

Ergo, the motion of Sirius XM Radio, Inc. for summary judgment as to all claims [d/e 116] is GRANTED.

The Defendant's Motion for Sanctions [d/e 152] is DENIED.

The Plaintiff's Motion for Order to Show Cause [d/e 155] is DENIED.

The Plaintiff's Motion to Strike the Defendant's Response to Plaintiff's Motion to Show Cause [d/e 163] is DENIED.

The Clerk will enter Judgment in favor of the Defendant and against the Plaintiff and close this case.

ENTER: March 20, 2020

FOR THE COURT:

/s/ *Richard Mills*
Richard Mills
United States District Judge